# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DUKE'S K9 DASH N' SPLASH, LLC, et al., | ) | CASE NO. 5:24-cv-218 |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| JOHN ZIZKA, et al., | ) | **AND ORDER** |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This action challenges conduct by a local zoning authority and local government employees. All defendants seek judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c). The first motion was filed by Dave Bultinck ("Bultinck"), Laura Chartier ("Chartier"), and Ben Fashing ("Fashing") (Doc. No. 23); the second was filed by Freedom Township Board of Zoning Appeals (the "BZA"), Roy Martin ("Martin"), and John Zizka ("Zizka") (Doc. No. 29); and the third was filed by Mary Helen Smith ("Smith"). (Doc. No. 30.) Plaintiffs, Duke's K9 Dash N' Splash, LLC ("Duke's") and Michelle Filler ("Filler"), filed a combined brief in opposition to defendants' motions. (Doc. No. 39.)[1] Each set of defendants filed a reply in support of their respective motion. (Doc. Nos. 42, 45, 46.)

Also before the Court is plaintiffs' motion for leave to amend their complaint. (Doc. No. 31.) The BZA, Martin, and Zizka filed an opposition (Doc. No. 35), and plaintiffs filed a reply.

---

[1] Plaintiffs' brief in opposition was not timely filed and could be disregarded on that basis alone. But even if the Court considers the arguments contained therein, they are not sufficient to overcome defendants' respective motions.

(Doc. No. 37.)[2] Additionally, plaintiffs move to voluntarily dismiss their negligent infliction of emotional distress claim (Doc. No. 38), which defendants do not oppose.

Plaintiffs' unopposed motion to voluntarily dismiss Count VIII is GRANTED and, for the reasons set forth herein, defendants' motions for judgment on the pleadings are GRANTED as to the constitutional claims (Counts I, II, III, IV, and V), and plaintiffs' motion for leave to amend is DENIED. Further, the Court declines to exercise supplemental jurisdiction as to the remaining state-law claims (Counts VI and VII).

## I.    BACKGROUND[3]

This case involves a dispute over the denial of an agricultural permit by the Freedom Township BZA, a decision which was already appealed to and upheld by a state court. (*See* Doc. No. 17-1 (Portage County Common Pleas Court Opinion).)[4] Although plaintiffs were originally granted an agricultural permit, that grant was appealed to the BZA, which held an evidentiary hearing on the issue and, after "consider[ing] all relevant factors," determined that "the structures in question . . . were to be used solely for [plaintiffs'] business." (*Id.* at 3–4.)[5] Therefore, the BZA held, "the use for which the exemption was sought [was] not an agricultural purpose." (*Id.*

---

[2] This document was improperly docketed as a brief in opposition to the motions for judgment on the pleadings.

[3] The Court accepts all factual allegations in the complaint as true for purposes of the motions for judgment on the pleadings. *See Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011).

[4] In ruling on a Rule 12(c) motion, the Court considers all available pleadings and may also consider: "(1) any documents attached to, incorporated by, or referred to in the pleadings; (2) documents attached to the motion for judgment on the pleadings that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice." *Dudek v. Thomas & Thomas Attorneys & Counselors at Law, LLC*, 702 F. Supp. 2d 826, 832 (N.D. Ohio 2010) (citations omitted). "Court rulings . . . are matters of public record, and matters of which a court may properly take judicial notice." *Huff v. FirstEnergy Corp.*, 972 F. Supp. 2d 1018, 1029 (N.D. Ohio 2013) (citing *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." (further citation omitted))). Moreover, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss [or for judgment on the pleadings] into one for summary judgment." *Com. Money See Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (citation omitted).

[5] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

2

(upholding the BZA's decision as "not unlawful, unreasonable, [or] against the manifest weight of the evidence").) Despite their unsuccessful appeal to the common pleas court, however, plaintiffs later requested and received "a new agricultural permit" in January 2023, and plaintiffs' desired "new building is now complete[.]" (Doc. No. 1 (Complaint) ¶¶ 54, 57.)

In February 2024, plaintiffs initiated the present lawsuit, asserting five constitutional and three state-law tort claims against the BZA and six current and former Freedom Township officials. Forty-four consecutive numbered paragraphs in the complaint set forth nearly four years' worth of "facts common to all claims" (*id.* ¶¶ 15–58), but none of the claims are tethered to specific facts, leaving the Court to guess which facts might support each claim. Further, plaintiffs insist that many of the complaint's allegations have "***absolutely nothing*** to do with" the BZA hearing. (Doc. No. 39, at 5 (emphasis in original).) The complaint's kitchen-sink pleading style fails to fulfill plaintiffs' obligations under the rules. *Bartlett v. State*, No. 17-2274, 2018 WL 5116347, at *2 (6th Cir. May 9, 2018) ("A plaintiff 'must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (emphasis in original) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Lee v. Ohio Educ. Ass'n*, 951 F.3d 386, 392–93 (6th Cir. 2020) (holding that plaintiff's failure to "'connect specific facts or events with the various causes of action she asserted' . . . violated Rule 8(a)(2)'s requirement that she provide the defendants 'adequate notice of the claims against them and the grounds upon which each claim rests'" (citations omitted)).

The Court has nonetheless tried to connect the complaint's factual allegations to each of the specific claims to determine whether plaintiffs have set forth sufficient allegations that nudge their claims across the line from conceivable to plausible. As set forth below, the facts as alleged in the complaint, even if accepted as true, cannot sustain the constitutional claims asserted by

plaintiffs; additionally, the Court declines to exercise supplemental jurisdiction over the state-law claims.

### A.      Pre-Purchase Period

Filler is the sole member and manager of Duke's. (Doc. No. 1 ¶ 6.) Although the complaint does not specifically identify the services offered by Duke's, it suggests that Duke's is involved in "dog breeding and training" (*id.* ¶ 21) and indicates that Duke's partnered with North America Diving Dogs ("NADD") to host dog diving competitions. (*Id.* ¶ 39.) In May 2020, Filler was considering purchasing a 25-acre plot of land in Freedom Township as a new location for Duke's, which was located in Mantua, Ohio at the time. (*Id.* ¶ 15.) Before purchasing the property, Filler sought the guidance of the Freedom Township zoning inspector "to make sure that the plans for use of the [land] were acceptable[.]" (*Id.*) The zoning inspector referred Filler to defendant Ben Fashing, who was then a member of the Freedom Township BZA. (*Id.* ¶¶ 8, 15.) Fashing told Filler that the property was zoned for agricultural, commercial, and residential use and that she should complete a conditional use permit application and bring it to the July 2020 BZA meeting. (*Id.* ¶ 16.)

When Filler went to the July 2020 BZA meeting with her application, defendant Roy Martin, then a Freedom Township Trustee (*id.* ¶ 7), told Filler that "she was in the 'wrong meeting,'" that "the conditional use permit application was not needed," and that "the procedure was to inform the zoning inspector of their plans and that if the zoning inspector approved, nothing more was required." (*Id.* ¶ 17.) Filler then spent the next several months, from July through September 2020, contacting "Freedom Township officials for answers about exactly what was required to obtain the permit to allow Duke's to relocate its operations." (*Id.* ¶ 18.) Eventually, Filler "decided to again attempt to turn in a permit application at the September 2020 [BZA]

4

meeting." (*Id.*) At the September meeting, Filler was informed that the zoning inspector[6] had resigned and that she "needed to contact the Interim Zoning Inspector, Freedom Township Trustee Jeff Derthick, who would review the application prior to submitting it to the [BZA]." (*Id.* ¶ 19.)

When Filler met with Derthick in September 2020, Derthick informed Filler "that he was waiting to hear back from the county prosecutor who was researching applicable case law, but that Filler could still meet with him that evening to review the completed application." (*Id.* ¶ 20.) During that meeting, Derthick reviewed the application and told Filler that both he and the county prosecutor believed the land use would be agricultural. (*Id.*) Derthick therefore "informed Filler that no permit was required and advised her not to turn in the permit application." (*Id.*) The minutes of the September BZA meeting "indicate" that both Derthick and defendant John Zizka, then a Freedom Township Trustee (*id.* ¶ 7), "stated publicly that, 'dog breeding and training is agricultural[.]'" (*Id.* ¶ 21.)

"Based on the foregoing, in November 2020, Filler purchased the property and Plaintiffs immediately started improvements to be ready for the start of their season to begin on May 1, 2021." (*Id.* ¶ 22.)

### B.    Post-Purchase Period

Beginning in January 2021, defendant Zizka "began a campaign against Plaintiffs, stating that the land use was not agricultural and that Plaintiffs needed to obtain a conditional use permit." (*Id.* ¶ 24.) "On multiple occasions," both Gerald Apple (the newly appointed zoning inspector) and Derthick "explained to Zizka that Plaintiffs were agricultural exempt and there was nothing that

---

[6] The complaint, presumably in error, lists Mike Baker as both the "Freedom Township Zoning Inspector" (Doc. No. 1 ¶¶ 15, 17) and as the "Township Building Inspector." (*Id.* ¶ 19.)

he could do to prohibit Plaintiff's [*sic*] intended use of the property." (*Id.*) Apple ultimately resigned in May 2021, "claiming that he was constantly harassed by Zizka." (*Id.*)

Also in May 2021, Zizka "stated publicly that he had contacted the Portage County Health District and filed a complaint against Plaintiffs for running an illegal campground," which plaintiffs allege was a knowingly false accusation. (*Id.* ¶ 25.) Then, in June 2021, Zizka instructed defendant Laura Chartier, who was then the assistant zoning inspector but also the cousin of Zizka's wife, to issue a zoning warning to plaintiffs stating that their land use was not agricultural. (*Id.* ¶¶ 27–28.)

As a result of Zizka's complaint about an illegal campground, defendant Mary Helen Smith, the Director of the Portage County Health District, began an investigation into plaintiffs' use of their property. (*Id.* ¶ 26.) In September 2021, Smith signed an affidavit for an administrative search warrant on plaintiffs' property, averring that she had "'reason to believe that physical conditions [at Plaintiffs' place of business] . . . may exist that are or may become hazardous to public health, safety, or welfare'" and that the "'conditions include but are not limited to activities being undertaken without a license that may meet the definition of a swimming pool; food service operation campground; and private water system; building and plumbing. [sic]'" (*Id.* ¶ 32 (alterations in complaint).) A Portage County Common Pleas Court issued the requested warrant (*id.*) and the Portage County Health District, Building Department, and Police Department searched plaintiffs' property on September 29, 2021, and October 2, 2021. (*Id.* ¶¶ 32–33, 35.) "Plaintiffs never heard anything more . . . regarding the outcome of the September and October 2021 searches." (*Id.* ¶ 36.)

On October 3, 2021, defendant Chartier "issued a second and final violation notice" to plaintiffs and indicated that she would "ask[] the township trustees at the November 4, 2021

meeting to vote on moving the issue to the Portage County Prosecutor for further action." (*Id.* ¶ 37.) Filler attended the November 4 meeting and "gave a ten-minute presentation to the Trustees and the community about everything that had happened to date." (*Id.* ¶ 38.) Chartier ultimately did not ask the trustees to escalate the matter to the prosecutor. (*Id.*)

In November 2021, plaintiffs received an email from their business partner, NADD, in which NADD explained they were aware of potential land use violations on plaintiffs' property. (*Id.* ¶ 39.) The complaint then references an email thread that plaintiffs claim demonstrates "that Zizka had been in direct contact with [NADD] since at least July 21, 2021." (*Id.* ¶ 40.) In their letter, NADD gave plaintiffs six months to obtain written confirmation from Freedom Township, the Portage County Building Department, and the Portage County Health District that there were no outstanding violations, or else NADD would not renew their contract with Duke's. (*Id.* ¶ 39.)

Freedom Township and the Building Department provided plaintiffs with no-violation letters, but "Smith and the Portage County Health District refused to" do so. (*Id.* ¶¶ 43–45.) Plaintiffs submitted to NADD the two no-violation letters and the favorable results of a well permit inspection by the Portage County Health District. (*Id.* ¶ 47.) In March 2022, NADD acknowledged receiving the documentation but "after careful review of the information provided and the correspondence from counsel," NADD indicated that it still had valid concerns regarding Duke's compliance with local and state law and "[did] not believe that Duke [*sic*] would be able to comply with the terms of a 2022 contract." (Doc. No. 1-1 (NADD Letter), at 1.) As such, NADD did not renew its contract with Duke's for the 2022 season, resulting in lost business revenue for plaintiffs. (Doc. No. 1 ¶ 48.)

Additionally, plaintiffs allege that Chartier, after being terminated from her position as interim zoning inspector in January 2022[7], wrote an anonymous letter to plaintiffs' mortgage lender falsely claiming that plaintiffs had engaged in fraud. (*Id.* ¶ 55.) "The mortgage lender investigated and no fraud was detected." (*Id.*) The complaint also appears to suggest that either the Portage County Building Department or Health District provided false information to the Environmental Protection Agency about plaintiffs potentially adding a septic system, although it does not expressly allege as much. (*Id.* ¶ 52.)

### C.  The Building Permit and the BZA Hearing

"In March 2022, plaintiffs wanted to begin work on a new building" on their property and applied for an agricultural exemption permit. (*Id.* ¶ 49.)[8] The zoning inspector initially approved the permit, but the approval was appealed to the BZA (the complaint does not specify by whom) in April 2022. (*Id.* ¶ 50.) On May 3, 2022, the BZA held an evidentiary hearing on the issue and ultimately "voted 5-3 to revoke" the agricultural exemption permit. (*Id.*) During the meeting, BZA members Fashing and Bultinck stated "that they had done research on [Filler]'s business and property prior to the hearing," which plaintiffs claim "is a violation of due process." (*Id.*; *see also id.* ¶ 51 (alleging that "the Freedom Township Trustees voted to suspend and/or terminate Defendants Fashing and Bultinck for their misconduct during the permit hearing").)

On June 2, 2022, Filler filed an administrative appeal to the Portage County Common Pleas Court from the BZA's decision to revoke plaintiffs' agricultural permit. (Doc. No. 17-1, at 3–4.)

---

[7] Plaintiffs allege that Chartier was terminated "due to her misconduct in connection with Plaintiffs' situation." (Doc. No. 1 ¶ 46.)

[8] Although it is not clear from the complaint, plaintiffs clarify in their brief that the agricultural exemption permit "only pertained to the proposed use for the proposed ***building*** and had nothing to do with the use of the ***land***[.]" (Doc. No. 39, at 5 (emphasis in original) (citing Doc. No. 1 ¶ 49).) Regardless, the state court found that both "the structures, and the one acre upon which they were to be located, were to be used solely for [Filler's] business[.]" (Doc. No. 17-1, at 3.) The Court's analysis is therefore equally applicable regardless of whether the permit revocation at issue affected plaintiffs' land use and/or the construction of the proposed building.

On December 6, 2022, the Portage County Common Pleas Court sustained the BZA's decision and overruled the appeal. In the opinion, the court explained that:

> Upon review of the record and all briefs filed in the instant mater, it is clear that the [BZA] considered all relevant factors in making its decision. [Filler], in her application for the permit, specifically sought the exemptions for one large metal building, four sheds of various sizes, and two carports. The location of said structures is on approximately one acre of [Filler's] property, which consists of approximately twenty-five acres in total. Notwithstanding the use to which the majority of [Filler's] property is put, the record is clear that the structures in question, and the one acre upon which they were to be located, were to be used solely for [Filler's] business, Duke's Dash and Splash, a dog swimming and diving facility. The issue at hand was whether [Filler's] proposed use of the facility for which the exemption was sought designated an agricultural use.
>
> There was testimony made both in favor of and against the requested variance. The record is clear that the [BZA] considered all factors in making its decision and that the Board determined that the use for which the exemption was sought is not an agricultural purpose. And, as such, the decision of the [BZA] which revoked the agricultural exemption permit for construction of various structures on property owned by [Filler] was not unlawful, unreasonable, and against the manifest weight of the evidence.
>
> IT IS THEREFOR ORDERED that the decision of the [BZA] is hereby sustained, and the administrative appeal of [Filler] is hereby overruled.

(*Id.*)

Despite their unsuccessful appeal, plaintiffs requested a new agricultural permit from the Freedom Township Zoning Inspector in January 2023. (Doc. No. 1 ¶ 54.) That permit was issued, and "[t]he new building is now complete[.]" (*Id.* ¶¶ 54, 57.) Plaintiffs claim, however, that they "have been put to undue burden and expense to defeat the Defendants [*sic*] efforts to harass, delay, and deny Plaintiffs' use of their property for business purposes." (*Id.* ¶ 57.) Plaintiffs allege violations of 42 U.S.C. § 1983 (Count I), conspiracy to violate 42 U.S.C. § 1983 (Count II), violations of the Fifth Amendment Takings Clause (Count III), violations of their substantive due process rights (Count IV), violations of their procedural due process rights (Count V), tortious interference with contractual and business relations (Count VI), intentional infliction of emotional

distress (Count VII), and negligent infliction of emotional distress (Count VIII). (*See id.* ¶¶ 59–97.)

## II.    LEGAL STANDARDS

### A.    Motion for Judgment on the Pleadings

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "The standard of review for a judgment on the pleadings is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 240 (6th Cir. 2011) (citation omitted).

"A complaint need not contain 'detailed factual allegations.' But it must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *LM Ins. Corp. v. Criss for Estate of Szuhay*, 716 F. App'x 530, 533 (6th Cir. 2017) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); and then *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Mere labels and conclusions are not enough[.]" *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017). A court "need not accept legal conclusions in the complaint as being true[,]" *Eye Ctrs. of Am., LLC v. Series Protected Cell 1, a Series of Oxford Ins. Co. TN, LLC*, No. 22-5138, 2022 WL 13983763, at *2 (6th Cir. Oct. 24, 2022) (citation omitted), unless the

complaint has "supported [them] with enough pleaded facts[.]" *Bates v. Green Farms Condo. Assn.*, 958 F.3d 470, 480 (6th Cir. 2020). Nor should a court accept as true "'a legal conclusion couched as a factual allegation[.]'" *Rondigo, L.L.C. v. Town of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence . . . , its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984).

### B.    Motion for Leave to Amend

In general, a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "But a court need not grant a motion to amend when the reason for amendment is improper, such as . . . *futility of amendment*[.]" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (emphasis in original) (internal quotation marks and citation omitted). "'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.'" *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (quoting *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (further citation omitted)).

11

## III.    DISCUSSION

### A.    Constitutional Claims

#### 1.    *BZA's Ability to Be Sued*

As an initial matter, the BZA contends that it "is not *sui juris*" and that the Court must therefore dismiss all claims against it. (Doc. No. 29, at 12–13.) "Whether a municipal agency can be sued is determined 'by the law of the state where the court is located[.]'" *Sharaydeh v. Warren Cnty., Ohio*, No. 1:23-cv-409, 2024 WL 1620783, at *2 (S.D. Ohio Apr. 15, 2024) (quoting Fed. R. Civ. P. 17(b)(3)). The Ohio statute governing boards of zoning appeals does not explicitly state whether they may sue or be sued. *See* Ohio Rev. Code § 303.15. Nonetheless, case law demonstrates that a board of zoning appeals can be sued in at least some contexts. *See, e.g.*, *Danis Montco Landfill Co. v. Jefferson Twp. Zoning Comm.*, 620 N.E.2d 140, 141 (Ohio Ct. App. 1993) (allowing suit against zoning commission and board of trustees for violations of Ohio Rev. Code § 121.22, Ohio's "Sunshine Law"). Regardless, neither party has directed the Court to on-point and binding precedent on this issue, nor has the Court's independent review revealed as much.

The Sixth Circuit's decision in *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006) is instructive. There, the court explained that the named defendant, Zanesville's police department, was not *sui juris* but rather a subdivision of a municipal corporation, which was the proper defendant. *Id.* (citing Ohio Rev. Code § 715.01). The court thus elected to "liberally construe the complaint as having been brought against the City of Zanesville and proceed to consider the merits of [plaintiff's] claims." *Id.* Here, the BZA is a subdivision of Freedom Township, which unquestionably has the capacity to be sued. *See* Ohio Rev. Code § 503.01 (providing that a civil township, such as Freedom Township, may sue and be sued). Accordingly,

this Court will liberally construe the claims against the BZA as claims against Freedom Township and assess whether those claims are sufficiently pled.

2.    *Count III: Takings Claim Under the Fifth Amendment*

Plaintiffs allege that defendants Zizka, Martin, Chartier, Fashing, Bultinck, and the BZA "abused their land use power[,]" resulting in a taking without just compensation in violation of the Fifth Amendment to the U.S. Constitution. (Doc. No. 1 ¶¶ 72–74.) Defendants move to dismiss plaintiffs' Takings Clause claim on various grounds, including that plaintiffs have failed to plausibly allege the essential elements of the claim, that they are entitled to immunity, that the claims are barred by res judicata, and that the applicable statute of limitations has lapsed. (Doc. No. 23, at 6–9; Doc. No. 29, at 17–19; Doc. No. 30, at 7–8.)

As an initial matter, Sixth Circuit precedent does not establish that an individual officer can be liable for a Takings Clause claim, so none of the individual defendants' potential individual liability was clearly established at the time of the relevant conduct. *See Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 468 (6th Cir. 2023) (citing *Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984)). Accordingly, this claim is only potentially valid as to the BZA/Freedom Township.

The Takings Clause, which applies to the individual states via the Fourteenth Amendment, provides that the government may not take citizens' private property without just compensation. A regulatory taking, such as the one alleged here, "occurs when the Government prevents a [property owner] from making a particular use of the property that otherwise would be permissible." *McKay v. United States*, 199 F.3d 1376, 1382 (Fed. Cir. 1999) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)). Thus, it is not a taking if "the proscribed use interests were not part of [the owner's] title to begin with[,]" or if the owner is barred from using the land in a way that is already prohibited by "existing rules

13

or understandings that stem from an independent source such as state law[.]" *Lucas*, 505 U.S. at 1027, 1030 (citation and quotation marks omitted); *see also Andrews v. City of Mentor, Ohio*, 11 F.4th 462, 470–71 (6th Cir. 2021) ("In *Lucas*, the Court recognized that certain use rights are not part of the bundle acquired when title is taken—as determined by background principles of state property and nuisance law." (citing *Lucas*, 505 U.S. at 1029–30)).

The Supreme Court has developed two tests to determine whether a regulatory taking has occurred. The first requires courts to assess whether a regulation "denies *all* economically beneficial or productive use" of the plaintiff's land. *Lucas*, 505 U.S. at 1015 (emphasis added) (citations omitted). The second requires courts to examine: (1) the "economic impact of the regulation on the [plaintiff][;]" (2) "the extent to which the regulation has interfered with [the plaintiff's] distinct investment-backed expectations[;]" and (3) "the character of the governmental action"—for example, "[a] 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978) (internal citation omitted).

The only of plaintiffs' allegations that could potentially be actionable under the Fifth Amendment is the BZA's revocation, upon the initial appeal, of plaintiffs' agricultural exemption permit. (*See* Doc. No. 1 ¶¶ 49–50.) While timely[9], the May 2022 permit revocation is barred by

---

[9] Because 42 U.S.C. § 1983 does not provide a statute of limitations, "courts must borrow one from the most analogous state cause of action." *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 292 (6th Cir. 2019). The Supreme Court has held that "courts entertaining claims brought under 42 U.S.C. § 1983 should borrow the state statute of limitations for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 236, 109 S. Ct. 573, 574, 102 L. Ed. 2d 594 (1989) (citation omitted). As a result, Ohio's two-year statute of limitations for personal injury actions apply to plaintiffs' § 1983 claims. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003).

issue preclusion, and does not constitute an unlawful taking under either the categorical *Lucas* test or the multi-factor *Penn Central* test.

To begin, defendants are correct that plaintiffs' constitutional claims, insofar as they relate to the BZA's decision, are barred by issue preclusion. Under Ohio law, issue preclusion applies when the issue "(1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action." *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994) (citation omitted); *see also Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523, 106 S. Ct. 768, 88 L. Ed. 2d 877 (1986) (the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to "give the same preclusive effect to a state-court judgment as another court of that State would give").

Here, the issue of whether the BZA's decision was "unlawful, unreasonable, [or] against the manifest weight of the evidence" was already litigated by a court of competent jurisdiction in a case involving the same plaintiffs (i.e., the parties against whom collateral estoppel is being applied). (Doc. No. 17-1, at 3–4.) Specifically, the Portage County Common Pleas Court found that "the structures in question, and the one acre upon which they were to be located, were to be used solely for [Filler]'s business," and that the "record is clear that the [BZA] considered all factors in making its decision" that "the use for which the exemption was sought [was] not an agricultural purpose." (*Id.*) That decision is final as it was never appealed, and plaintiffs may not relitigate the issue in federal court. *Bowman v. City of Olmsted Falls*, 756 F. App'x 526, 531–32 (6th Cir. 2018) (affirming dismissal because plaintiff was "collaterally estopped from raising his Takings Clause claim because he asserted and lost on the same underlying issues" in state court); *WCI, Inc. v. Ohio Dep't of Pub. Safety*, 475 F. Supp. 3d 770, 776 (S.D. Ohio 2020) (barring "due-

process, takings," and other claims because "Plaintiff received a valid, final judgment on the merits of these claims, when the [state] court rejected them. This bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." (citing *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1091–92 (Ohio 2004))), *aff'd*, 18 F.4th 509 (6th Cir. 2021).

Additionally, the essential elements of a takings claim are lacking here because plaintiffs do not plausibly allege that "the proscribed use interests"—namely, the ability to operate a business and construct buildings for that business on land zoned for agricultural use—were part of their constitutionally-protected property rights "to begin with." *Lucas*, 505 U.S. at 1027; *see also Andrews*, 11 F.4th at 472 ("[T]he deprivation of the right to use property for a particular purpose is not a 'taking' if that right was never a part of the titleholder's bundle of rights to begin with." (citing *Lucas*, 505 U.S. at 1027)); *Skilwies v. City of Huber Heights*, 689 F. Supp. 3d 540, 550 (S.D. Ohio 2023) (in the context of preliminary injunction, holding that constitutional claims were unlikely to succeed because "Plaintiff does not have the constitutional right to operate a diesel truck repair business on property zoned for agricultural use.").

Furthermore, plaintiffs do not allege that the BZA's decision to revoke the permit deprived them of "all economically beneficial or productive use" of their land, as is required under *Lucas*. 505 U.S. at 1015. Nor could they. The permit revocation simply prohibited plaintiffs from constructing a specific building on the premises; it did not stop plaintiffs from obtaining *any* economic benefit from the land. *See id.*; *Ohio ex rel. Faulkner v. City of Middletown, Ohio*, 688 F. App'x 377, 380 (6th Cir. 2017) (affirming district court's finding that no taking occurred where the relevant zoning ordinance still permitted plaintiff "to obtain *some* economic benefit from the land" (emphasis in original)).

16

Finally, plaintiffs make no factual allegations that would allow their claim to survive under *Penn Central*. In their brief, plaintiffs do not engage with the *Penn Central* factors at all. For example, plaintiffs do not explain how the revocation of an agricultural exemption permit could reasonably be described as a "physical invasion" of the land. *Penn Central*, 438 U.S. at 124. Further, inasmuch as the permit revocation related specifically to the building (*see infra*, at n.8), plaintiffs fail to indicate whether or why they reasonably expected to be able to construct the building at the time they bought the property.[10] Accordingly, plaintiffs have not stated a viable Fifth Amendment claim against any defendants, and that claim is dismissed.

### 3. Count IV: Substantive Due Process Claim

Plaintiffs next assert that "[the BZA], and its individual officials[11] acted in an arbitrary and capricious manner in persistently obstructing and interfering with Plaintiffs' reasonable, lawful and commercial use of their property." (*Id.* ¶ 76.) Again, plaintiffs make no effort to connect specific factual allegations to this claim, but the BZA's May 2022 hearing and permit revocation is the only reasonably plausible basis for plaintiffs' substantive due process claim.[12] Defendants

---

[10] Although Filler allegedly spoke with Freedom Township's then-zoning inspector in May 2020 to "make sure that the plans for use of the [land] were acceptable before completing the purchase" of the property (Doc. No. 1 ¶ 15), other allegations in the complaint make clear that Filler was not contemplating constructing a building on the property at that time. (*Id.* ¶ 23 (alleging that plaintiff spoke with the then-zoning instructor in December 2020 and both parties "agreed" that "Plaintiffs were not erecting any permanent structures at that time"); *see also id.* ¶¶ 22, 49 (stating that plaintiff purchased the property in November 2020, but it was not until "March 2022 [that] Plaintiffs wanted to begin work on a new building").)

[11] Plaintiffs are presumably referring to defendants Fashing and Bultinck even though the claim is asserted against all six individual defendants, most of whom were not members of the BZA.

[12] Plaintiffs make the conclusory allegation that Fashing and Bultinck's pre-hearing research into their business and property "is a violation of due process." (Doc. No. 1 ¶ 50.) Plaintiffs provide no factual or legal support for their conclusion, nor do they specify whether they believe pre-hearing research is a substantive or procedural due process violation. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation and alterations omitted). Regardless, Ohio Rev. Code § 303.15, which governs county boards of zoning appeals, does not prohibit BZA members from conducting pre-hearing research. Plaintiffs submit no authority, and the Court finds none, supporting the proposition that such pre-hearing research violates the constitution.

move to dismiss this claim on various grounds, including insufficient pleading, failure to plausibly allege the elements of the claim, and res judicata. (*See, e.g.*, Doc. No. 23, at 9–10.)

To state a substantive due process claim in the context of zoning regulations, the Sixth Circuit requires plaintiffs to show that "(1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (citations omitted). To establish a constitutionally protected property right in a desired land use, a plaintiff "must point to some policy, law, or mutually explicit understanding that both confers the benefit[] and limits the discretion of the [township] to rescind the benefit." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 435 (6th Cir. 2005) (quoting *Med. Corp., Inc. v. City of Lima,* 296 F.3d 404, 410 (6th Cir. 2002)).

Here, plaintiffs have alleged no such policy, law, or understanding conferring upon them a constitutional right to an agricultural exemption permit, or to operate plaintiffs' business on land zoned for agricultural use. *See R.S.W.W.*, 397 F.3d at 435. While the complaint makes a vague reference to "dog breeding and training" (*id.* ¶ 21) and indicates that Duke's had hosted dog diving competitions with NADD (*id.* ¶ 39), it fails to expressly describe either the full range of services Duke's provides, or the intended use of the building plaintiffs hoped to build. Accordingly, plaintiffs do not allege facts that, if believed, would demonstrate that plaintiffs' intended land use was in fact agricultural, as opposed to commercial as the BZA ultimately concluded and the common pleas court upheld. *See Crossroads Outdoor LLC v. Howell Twp.*, No. 2:18-cv-13133, 2019 WL 1645453, at *5 (E.D. Mich. Apr. 16, 2019) ("Because Plaintiff failed to identify a constitutionally-protected interest to which it was entitled, it failed to state a Fourteenth Amendment procedural or substantive due process claim[.]"). Accordingly, plaintiffs have failed

18

to plausibly allege that the BZA acted arbitrarily or capriciously in concluding that plaintiffs' intended land use was not agricultural.

Furthermore, as discussed above, a state court already found that "the [BZA considered all factors in making its decision" and that the BZA's decision was "not unlawful, unreasonable, [or] against the manifest weight of the evidence." (Doc. No. 17-1, at 3–4). Thus, plaintiffs cannot now relitigate this issue in federal court. *Thompson*, 637 N.E.2d at 923; *Bowman*, 756 F. App'x at 531; *WCI, Inc.*, 475 F.Supp.3d at 776. For these reasons, plaintiffs have failed to plausibly allege a substantive due process claim, and the claim is dismissed.

### 4.     *Count V: Procedural Due Process Claim*

Plaintiffs also allege, without analysis, that their procedural due process rights were violated "[a]s a direct and proximate result of the unconstitutional misconduct of the Defendants[.]" (Doc. No. 1 ¶¶ 80–81.) Defendants move to dismiss this claim on various grounds. (Doc. No. 23, at 10–11; Doc. No. 29, at 19–20; Doc. No. 30, at 9–10.)

To establish a procedural due process claim, a plaintiff must allege that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010) (citation omitted). Thus, when a government deprives someone of a constitutionally protected liberty or property interest, due process requires "notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985). Again, plaintiffs' complaint and opposition brief fail to identify which factual allegations, if any, support this claim, falling far short of well-established pleading standards. Nevertheless, even assuming this claim pertains to the May 2022 BZA hearing, the complaint fails to state a legally viable claim.

First, the complaint acknowledges that plaintiffs did in fact receive a hearing before their permit was revoked (Doc. No. 1 ¶ 50), and plaintiffs do not allege a lack of notice as to the hearing. Therefore, the complaint does not plausibly allege that defendants deprived plaintiffs of "notice and an opportunity to respond," the *sine qua non* of a procedural due process claim. *See Loudermill*, 470 U.S. at 546; *Farmer v. Bd. of Educ.*, 23 F.3d 406 (6th Cir. 1994) (Table) ("Notice and an opportunity to respond were all that was required.").

Second, as described above, the complaint does not allege facts that could establish that plaintiffs had a constitutional right to operate a business (or construct a building for business purposes) on land zoned for agricultural purpose. *Skilwies*, 689 F.Supp.3d at 550 ("In the absence of a constitutionally protected right, the City cannot deprive Plaintiff of a constitutionally protected right."). Accordingly, plaintiffs' procedural due process claim fails as a matter of law.

> 5. *Counts I and II: Violation of 42 U.S.C. § 1983 and Conspiracy to Violate 42 U.S.C. § 1983*

Plaintiffs allege that defendants, acting under color of state law, violated their constitutional rights. (Doc. No. 1 ¶¶ 60–65.) However, in alleging their § 1983 claim, plaintiffs do not assert any specific deprivations of their constitutional rights and instead make only vague references to the Fifth and Fourteenth Amendments. (*See id.* ¶ 60 ("The Defendants have intentionally and/or recklessly acted with deliberate indifference and/or reckless indifference to the Plaintiffs' constitutional rights, including their property guaranteed by the Fifth and Fourteenth Amendments, as well as additional constitutional rights guaranteed by the federal and state constitutions.").)

The complaint's dearth of specificity appears to be attributable to a misunderstanding of § 1983: plaintiffs assert in their brief that "a plaintiff need only possibly allege some violation of federal law to state a § 1983 claim." (Doc. No. 39, at 8.) Plaintiffs are incorrect. The Sixth Circuit

"has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (emphasis in original). Plaintiffs' vague and conclusory allegations of "persistent and ongoing constitutional violations of the Plaintiffs' property rights" (Doc. No. 1 ¶ 63) do not meet this standard, and plaintiffs' other constitutional claims also fail as a matter of law, as described above. Accordingly, plaintiffs' standalone § 1983 claim is dismissed.

Plaintiffs also allege that defendants conspired to deprive them of their constitutional rights. (Doc. No. 1 ¶¶ 67–70.) To state a conspiracy claim under 42 U.S.C. § 1983, the complaint must also plausibly allege a § 1983 claim because "the gist of the section 1983 cause of action is the deprivation and not the conspiracy." *Miller v. Meyer*, No. 2:14-cv-101, 2014 WL 5448348, at *11 (S.D. Ohio 2014) (citations omitted). Plaintiffs do not assert any viable constitutional claims, and their § 1983 conspiracy claim therefore also fails.

### B.    State Law Claims

Plaintiffs' motion to voluntarily dismiss Count VIII (negligent infliction of emotional distress) is granted. (Doc. No. 38.) Accordingly, after dismissing plaintiffs' constitutional claims, the only claims left before the Court are Counts VI (tortious interference with contractual and business relations) and VII (intentional infliction of emotional distress), both of which arise under Ohio law. When a district court dismisses all the claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over the plaintiff's remaining state-law claims. *See* 28 U.S.C. §1367(c)(3). A court's decision whether to exercise supplemental

jurisdiction is entirely discretionary and depends on "judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). "As a rule of thumb, however, . . . [w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) (collecting cases); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims[.]"). Having dismissed all of plaintiffs' federal claims at this early stage of litigation, the Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

### C.        Motion for Leave to Amend the Complaint

Plaintiffs request leave to amend their complaint to add a reference to the Fourteenth Amendment under Count III (the Takings Clause claim). (Doc. No. 31, at 1.) Defendants Chartier, Fashing, and Bultinck assert that the Court should deny this motion because the amendment would be futile. (Doc. No. 35, at 1.) The Court agrees with defendants. Adding a reference to the Fourteenth Amendment would not change the fact that, as explained, defendants did not take any actions that could constitute a "taking." Because the amendment would be futile, *see Skatemore*, 40 F.4th at 737, the motion for leave to amend is denied.

### IV.    CONCLUSION

For the reasons set forth above, plaintiffs' unopposed motion to voluntarily dismiss Count VIII without prejudice (Doc. No. 38) is GRANTED, defendants' motions for judgment on the pleadings (Doc. Nos. 23, 29, 30) are GRANTED as to Counts I, II, III, IV, and V, and plaintiffs' motion to amend the complaint (Doc. No. 31) is DENIED. Further, the Court declines to exercise

supplemental jurisdiction as to Counts VI and VII, and those claims are dismissed without prejudice. This case is closed.

      **IT IS SO ORDERED**.

Dated: August 28, 2024

                                                     **HONORABLE SARA LIOI**
                                                     **CHIEF JUDGE**
                                                     **UNITED STATES DISTRICT COURT**